IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


PETER SAVAGE, CLIFF PUCKETT,
V. MICHAEL WALLACE, AND
GABRIEL TRIPLETT,

        Plaintiffs,

        v.

DOUG TWEEDY, PACIFIC NORTHWEST
REGIONAL COUNCIL OF CARPENTERS,
and UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

        Defendants.

No. 3:12-cv-1317-HZ

OPINION & ORDER


Catherine A. Highet
PORTLAND LAW COLLECTIVES, LLP
1130 SW Morrison, Suite 407
Portland, OR 97205

    Attorney for Plaintiff

Daniel M. Shanley
James L. Francesconi

1 - OPINION & ORDER

Matthew E. Malmsheimer
HAGLUND KELLEY HORNGREN JONES & WILDER, LLP
200 SW Market Street, Suite 1777
Portland, OR 97201

  Attorneys for Doug Tweedy and Northwest Pacific Regional Council of Carpenters

Brian F. Quinn
DECARLO, CONNOR & SHANLEY PC
101 Constitution Avenue, NW
Washington, DC 20001

Daniel M. Shanley
James L. Francesconi
Matthew E. Malmsheimer
HAGLUND KELLEY HORNGREN JONES & WILDER, LLP
200 SW Market Street, Suite 1777
Portland, OR 97201

  Attorneys for United Brotherhood of Carpenters and Joiners of America

HERNANDEZ, District Judge:

  Now before me is Plaintiffs' Motion for Preliminary Injunction ("Motion") (doc. #2)[1] filed by Peter Savage ("Savage"), Cliff Puckett ("Puckett"), Gabe Triplett ("Triplett"), and V. Michael Wallace ("Wallace") (collectively "Plaintiffs"). Plaintiffs' Motion seeks an order that Defendants: (1) "be preliminarily enjoined from implementing any aspect of the penalties imposed against [P]laintiffs July 13, 2012, [sic]"; (2) "be preliminarily enjoined to reinstate [P]laintiffs to any offices from which they have been removed pursuant to said penalties"; (3) "be preliminarily enjoined from denying [P]laintiffs any right or privilege of membership in the United Brotherhood of Carpenters or any subordinate body thereof"; and (4) "be preliminarily

---

[1] Plaintiffs request that in "the event that the court determines that issuing a preliminary injunction in the time frame requested by [P]laintiffs would be inappropriate, [P]laintiffs respectfully request that the court consider this motion as a Motion for Temporary Restraining Order." Mot., p. 2.

enjoined from taking any action to collect the fines imposed on [P]laintiffs pursuant to said discipline or penalizing plaintiffs in any way for failure to pay such fines". Mem., p. 2.

On August 10, 2012, a hearing was held and I issued an order denying Plaintiff's Motion, stating that this Opinion & Order would soon follow.

## BACKGROUND

The Complaint alleges two "Counts". "Count I" alleges violations of free speech and equal voting rights. It alleges that "[b]y running for office, campaigning on behalf of Reform Party candidates, voicing opposition to . . .[Doug Tweedy ("Tweedy")], and voicing other opinions concerning union affairs, [P]laintiffs engaged in activities protected under Sections 101(a)(1) and (2) of the [Labor Management Reporting and Disclosure Act ("LMRDA")], 29 U.S.C. § 411(a)(1) and (2)"[2] and that Defendants retaliated against and interfered with Plaintiffs' protected rights. See Compl., ¶¶ 36-40. "Count II" alleges violations of Plaintiffs' due process

---

[2] 29 U.S.C. 411 provides
    (a)(1) Equal rights
Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
(2) Freedom of speech and assembly
Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: <u>Provided</u>, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
29 U.S.C. 411(1)-(2) (emphasis in original).

3 - OPINION & ORDER

rights in violation of Section 101(a)(5) of the LMRDA, 29 U.S.C. 411(a)(5)[3] by "failing to adhere to applicable Bylaws and Constitutional requirements, purposefully selecting a biased Trial Committee, assist[ing] . . . the prosecution by individuals in neutral roles, coordinat[ing] with sequestered witnesses, and other irregularities."  Compl., ¶¶ 41-43.

The factual allegations in the Complaint allege as follows:

Plaintiffs are members of Local Union 156, a local union established in January 2011 in Oregon City, Oregon, by the United Brotherhood of Carpenters and Joiners of America ("UBC" or "International Union").  Savage is campaigning for the position of Executive Secretary Treasurer ("EST"), currently held by defendant Tweedy and is a supporter of the "Reform Party".[4]  Puckett is a member of Local 156 and actively campaigned for Savage and the Reform Party.  Wallace is a member of Local 156 and ran as a member of the Reform Party.  Triplett is a member of Local 156, and although he has not run for office in recent elections and was not disciplined, he participated in the phone banking for which the other Plaintiffs were disciplined and thus, "brings suit to vindicate his right as a union member to be represented by the candidates for whom he voted".  Id., ¶ 4.

Defendants include (1) UBC, a labor organization within the meaning of 29 U.S.C. § 402(i); (2) Pacific Northwest Regional Council of Carpenters ("Council" or "Regional Council"),

---

[3] 29 U.S.C. § 411(a)(5) provides "[s]afeguards against improper disciplinary action", stating:
No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

[4] The Complaint alleges that Plaintiffs and other members of Local 156 created an informal organization called the "Reform Party" for the purpose of increasing democracy, transparency, and rank-and-file power in their union.  Compl., ¶ 10.  The Complaint further alleges that the Reform Party opposes the policies of Tweedy.  Id.

4 - OPINION & ORDER

a subordinate body of the International which has "jurisdiction" in Oregon, Washington, Idaho, Wyoming and Montana; and (3) Tweedy, the presiding Regional Council EST.  Compl., ¶¶ 4-7.

In December 2011 Local Union 156 conducted elections in which Wallace ran for the position of Delegate to the Regional Council and Puckett ran for the position of Local Union 156 Vice President and Delegate to the Regional Council.  Both won their respective elections.

Defendants assert that during the 2011 Local Union 156 elections, Plaintiffs engaged in conduct that tainted the election by improperly obtaining access to Local Union 156's confidential membership list, using Local Union 156's offices to conduct mass phone banking, and using union staff to keep Local Union 156 offices open after hours without approval from Local Union 156's Executive Board, Election Committee, or members.  A member of Local Union 156 filed an election protest with the UBC General President regarding Plaintiffs' alleged improper activities, and based on a directive from General President, Local Union 156 was required to rerun the December 2011 election.

Plaintiffs were charged in January 2012 by members of Local Union 156 for violating various provisions of the UBC Constitution based on their alleged improprieties in the December 2011 election.  Local Union 156 reran the December 2011 elections in February 2012, which Plaintiffs Puckett and Wallace won again.  On April 18, 2012, a trial was held to address the charges against Plaintiffs.[5]  The Trial Committee found that all of the Plaintiffs, except Triplett, were guilty as charged for: (1) "[c]ausing dissension among the members of the United Brotherhood" pursuant to Section 51A(1) of the UBC Constitution; (2) "[d]efrauding the United Brotherhood or any subordinate body" pursuant to Section 51(A)(6) of the UBC Constitution; and (3) "[v]iolating the Obligation [(the members' oath to abide by the UBC Constitution and to

---

[5] During the April 18, 2012, hearing, Plaintiffs had the opportunity to, among other things, cross-examine witnesses and present testimony and evidence.

5 - OPINION & ORDER

be obedient to authority)]" pursuant to Section 51A(12) of the UBC Constitution.  McCarron Decl., Ex. 4, p. 3.

On May 19, 2012, the Regional Council's delegate body voted to impose the penalties recommended by the Trial Committee.  In a letter dated June 12, 2012, Plaintiffs appealed the verdicts and penalties and requested that their appeals be expedited.  To accommodate Plaintiffs' request for an expedited appeal, the Regional Council filed its Answer in an expedited manner on July 2, 2012, before it was required to do so under the UBC Constitution.[6]  Due to Plaintiffs' request for an expedited appeal, the UBC Appeals Committee also considered Plaintiffs' appeal on an expedited basis on July 7, 2012.  The UBC Appeals Committee ultimately upheld the verdicts and penalties imposed against Plaintiffs.

In a letter dated July 17, 2012, Tweedy requested "[o]n behalf of the Regional Council" that the UBC's General Executive Board stay the penalties imposed against Plaintiffs so that Plaintiffs could participate in the upcoming elections on August 17 and 18, 2012.  See Tweedy Decl., Ex. 3, p. 2.  The UBC General Executive Board granted the request for stay in a letter dated July 19, 2012.  See Id., Ex. 4, p. 3.  That same day, July 19, 2012, Plaintiffs filed this action and this Motion.[7]

---

[6] Under Section 53 of the UBC Constitution, the Regional Council has thirty days to file its answer to an appeal.  McCarron Decl. ¶ 16, Ex. 1 at 75-76.

[7] On August 28, 2012, Plaintiffs filed a Motion for Extension of Time to Appeal ("Motion for Extension of Time") (doc. # 42) notifying the court of their intention to appeal my August 10, 2012, order and asserting that they are "currently experiencing . . . irreparable harm" because "on Friday, August 24, 2012, . . . Tweedy [lifted the July 2012 stay of Plaintiffs' penalties and] instructed [P]laintiffs' local union to remove [them] from office, to impose fines immediately, and to advise [P]laintiffs they will be permanently stricken from membership if they fail to pay their fines within 60 days."  Mot. for Extension of Time, p. 2.  This Opinion & Order only addresses Plaintiffs' Motion in light of the facts as they stood as of August 10, 2012, the date of the hearing.  It does not address Plaintiffs' Motion in light of the facts as they stand today, including the fact that the July 2012 stay of Plaintiffs' penalties has been lifted.

6 - OPINION & ORDER

## STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). The standards for a temporary restraining order and a preliminary injunction are the same. See, e.g., Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original and citation omitted).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20. The Ninth Circuit has "glossed that standard by adding that there is a sliding scale approach which allows a plaintiff to obtain an injunction where he has only shown serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Developmental Serv. Network v. Douglas, 666 F.3d 540, 544 (9th Cir. 2011) (internal quotation marks and citations omitted).

## DISCUSSION

**I. Whether Defendants' Sanctions Violated the Free Speech Provision of the LMRDA**

Plaintiffs argue that they are likely to prevail on the merits because Defendants' stated reasons for disciplining them violated the free speech provisions of the LMRDA. I disagree.

7 - OPINION & ORDER

Plaintiffs contend that a union may not interfere with a members' free speech rights and their ability to campaign unless a reasonable rule provides otherwise. Plaintiffs assert that "[m]aking campaign phone calls is core protected free speech under the LMRDA" and that this theory alone is "sufficiently strong to warrant injunctive relief." Mem., p. 26. Plaintiffs also assert that pursuant to 29 U.S.C. 411(a)(2), it is their keystone right to campaign for office. In addition, Plaintiffs argue that the prohibition against "causing dissention" and the requirement to "be obedient to authority" in Section 51A of the UBC Constitution are overly broad, and that Defendants' charge of "defrauding" the union is simply "inapplicable." Id., p. 31. Finally, Plaintiffs assert that the UBC Constitution does not forbid candidates from participating in phone banks and that under the LMRDA, unions are permitted "to provide their members access to lists and facilities for phone banking." Id., p. 30.

Plaintiffs' arguments are unavailing. The evidence before me shows that Plaintiffs are free to campaign and participate in the August 2012 election and therefore their right to campaign for office has been preserved. Additionally, Plaintiffs fail to establish that the charges brought against them were based on their "free speech" rather than their actions of using the membership lists and other union resources. For example, evidence before me shows that the Appeals Committee sustained the penalties imposed on Plaintiffs because of "the manner by which [Plaintiffs] went about using the resources of the union, including gaining access to union hall and to information to make the calls . . . [without approval from] the Local Union membership nor the election committee." McCarron Decl., Ex. 4, pp. 4-5. The Appeals Committee further found that the penalties against Plaintiffs were proper where Plaintiffs

> took it upon themselves to go the Local Union one or two nights in November 2011, gain[ed] access to the Local Union's membership list with telephone numbers, and proceed[ed] to make phone calls to members . . . from the Local Union . . . [where the] [e]vidence in the record indicated that at least some callers

>asked contacted members to vote for [Plaintiffs'] slate . . . [even though] [t]his access was not made available to nor made known to other candidates beforehand.

Id., p. 5.

With respect to the unconstitutionality of rules 1 and 12 of the UBC Constitution, even if I were to conclude that those rules were unconstitutionally overbroad, such a determination would not necessarily result in the conclusion that Plaintiffs are likely to succeed on the merits. Noted above, Plaintiffs were also charged with "[d]efrauding the United Brotherhood or any subordinate body" in violation of rule 12 of Section 51A of the UBC Constitution. Savage Decl., Ex., 2, p. 2. Plaintiffs urge this court to hold that the term "defraud" means "to obtain a thing of value from them by means of some sort of misrepresentation" and that because there is no evidence that Plaintiffs made any misrepresentation, rule 12 of Section 51A of the UBC Constitution is "inapplicable". I, however, am mindful of the "well-established federal policy of avoiding unnecessary interference in the internal affairs of unions." Motion Picture & Videotape Editors Guild, Local 776, I.A.T.S.E. v. Int'l Sound Technicians, 800 F.2d 973, 975 (9th Cir. 1986) (citations omitted). Indeed, the Ninth Circuit has explicitly stated that "absent bad faith or special circumstances, an interpretation of a union constitution by union officials, as well as interpretations of the union's rules and regulations, should not be disturbed by the court." Id. Plaintiffs make no showing of bad faith or special circumstances warranting their interpretation of rule 12 of Section 51A of the UBC Constitution over that of Defendants'.

In addition, Plaintiffs point to no authority supporting their argument that the UBC Constitution does not forbid candidate participation in phone banks and that they did not violate their oath to adhere to the International Constitution. In fact, one of the cases on which Plaintiffs heavily rely, Chao v. Local 951, No. 1:05-CV-638, 2007 WL 208537, at *6-7 (W.D. Mich. 2007), goes against their position. In that case, the court denied plaintiff's motion for summary

9 - OPINION & ORDER

judgment where the "incumbent president" had "used a telephone service to make approximately 27,000 campaign calls" while plaintiff was not provided the same opportunity.[8] Chao, No. 1:05-CV-638, 2007 WL 208537, at *1.  The court found that there were issues of fact concerning, among other things, "whether [one of the candidates running against the incumbent] had a reasonable opportunity to use the telephone lists once their use by the [incumbent] had been disclosed." Id. at *7.

Similar to Chao, here there is evidence showing that other candidates in the December 2011 election did not have the same access or use of the membership list as Plaintiffs.  See McCarron Decl., Ex. 4, pp. 4-5.  In a letter dated January 12, 2012, the General President of UBC, Douglas J. McCarron ("McCarron"), found that Plaintiffs' access and utilization of the

---

[8] 29 U.S.C. § 481 provides:
> Every . . . local labor organization, and its officers, shall be under a duty . . . to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy . . . and to <u>refrain from discrimination in favor of or against any candidate with respect to the use of lists of members</u>, and whenever such labor organizations or its officers authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate or of the labor organization itself with reference to such election, similar distribution at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution.  Every bona fide candidate shall have the right, once within 30 days prior to an election of a labor organization in which he is a candidate, to inspect a list containing the names and last known addresses of all members of the labor organization who are subject to a collective bargaining agreement requiring membership therein as a condition of employment, which list shall be maintained and kept at the principal office of such labor organization by a designated official thereof. Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots.

29 U.S.C. § 481(c) (emphasis added).
Similarly, 29 C.F.R. 452.71(b) provides:
> It is the duty of the labor organization and its officers to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members. Thus, if a union permits any candidate to use such lists in any way other than the right of inspection granted by the Act, it must inform all candidates of the availability of the list for that purpose and accord the same privilege to all candidates who request it.

10 - OPINION & ORDER

membership list and access to Local Union 156's office to make telephone calls to members was "not made available . . . to other candidates" and was neither approved by the Local Union Election Committee, the Local Union Executive Board, or members of the Local Union and found that "[s]uch an arrangement [was not] . . . contemplated by the UBC Constitution, including Section 31H."[9]  McCarron Decl., Ex. 3, p. 2.

Although Plaintiffs may be correct that Section 31H of the UBC Constitution does not expressly prohibit candidates from participating in phone banks, such a determination does not necessarily lead to the conclusion that the actions taken against Plaintiffs were improper or otherwise establish that Plaintiffs are likely to prevail on the merits of their claims where Plaintiffs used Local Union 156's confidential membership list and its resources while other candidates were not afforded the same opportunity.

Based on the facts before me, I cannot conclude that Plaintiffs are likely to prevail on the merits.

## II. Whether Plaintiffs Were Disciplined to "Derail" Them

The Ninth Circuit has stated that:

> Section 101(a)(2) of the LMRDA provides, among other things, that "[e]very member of any labor organization shall have the right to . . . express at meetings of the labor organization his views . . . upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of the meetings." To state a cause of action for a violation of § 101(a)(2), a union member must allege facts showing that: (1) he or she exercised the right to oppose union policies; (2) he or she was subjected to retaliatory action; and (3) the retaliatory action was "a direct result of his [or her] decision to express disagreement" with the union's leadership.

---

[9] Section 31H of the UBC Constitution provides:
> Where required or permitted by law, a qualified candidate for office shall be permitted to examine the membership list containing the names and addresses of all the members once within thirty days prior to the election, and a Local Union or Council shall honor reasonable requests from candidates to have their campaign literature mailed by the Union at the candidates' expense.

Puckett Decl., Ex. 6, p. 42.

11 - OPINION & ORDER

Casumpang v. Int'l Longshoremen's and Warehousemen's Union, Local 142, 269 F.3d 1042, 1058 (9th Cir. 2001) (citing Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 354 (1989)).

   Plaintiffs assert that their "likelihood of prevailing is further increased by the ample evidence in the record demonstrating that the Council disciplined [P]laintiffs for the illicit purpose of undermining their candidacies in the upcoming EST election and attendant debate." Mem., p. 33. Plaintiffs maintain that Defendants disciplined Plaintiffs to derail opposition to Tweedy, and appear to assert that based on the evidence, they are likely to succeed on their retaliation or interference claims against Defendants. See Id. Specifically, Plaintiffs assert that Tweedy "encouraged and assisted" the parties who charged them, that Defendants engaged in procedural irregularities suggesting the purpose of the trial was to impose punishment rather than to adjudicate in a fair and disinterested manner, and that Plaintiffs' penalties "demonstrate Defendants' motive for disciplining them." Mem., pp. 34-36.

   None of the evidence on which Plaintiffs rely, however, establishes that they were disciplined for the purpose of derailing their opposition to Tweedy, let alone that they are likely to succeed on their retaliation and interference claims. With respect to Plaintiffs' first argument– that Tweedy encouraged and assisted the parties who charged them, Plaintiffs cite evidence which they contend shows that one of the charging parties, Jeff Harms ("Harms"), "acknowledged under oath at [P]laintiffs' trial that he was influenced in his decision to bring the charges by his discussion with . . . Tweedy". Id., p. 34. The portion of the record on which Plaintiffs rely, however, shows Harms stated that he did not talk to Tweedy before charging them. Savage Decl., Ex. 8, p. 273. Additionally, the record merely shows that Harms stated that Tweedy did not "discourage" him from "moving forward" with the charges. Id. The evidence

Plaintiffs cite does not clearly establish that Tweedy "influenced" Harm's decision to bring charges against them.

Plaintiffs also argue that Tweedy encouraged and assisted the parties who charged them by providing one of the charging parties, Tyson Stuber ("Stuber"), with a "plane ticket to one hearing[s] that was paid for by unnamed benefactors". Mem., p. 34. The evidence cited by Plaintiffs, however, does not support their assertion that Tweedy did in fact provide Stuber with a plane ticket. Rather, the evidence merely shows that Tweedy provided Stuber with a "confirmation number" of his plane ticket to one of the hearings. Suffice it to say, providing someone with a confirmation number for a ticket is not analogous to purchasing the actual ticket for that person.

Plaintiffs also imply that Stuber drafted the charges against Plaintiffs in exchange for a possible opportunity to get a "paid staff position". Id. The record, however, only shows that at some unspecified point during the three years Stuber has known Tweedy, Stuber "talk[ed] to Max [Murphy, a paid staff member supervised by Tweedy,] about becoming a Union rep . . . working for the Regional Council . . . ." Savage Decl., ¶ 37; Id., Ex. 8, p. 235. This evidence does not lead to the conclusion that Stuber improperly drafted the charges against Plaintiffs in return for a position with the Regional Council or otherwise establish that Tweedy acted improperly.

With respect to Plaintiffs' second argument–that Defendants' procedural irregularities suggest that the purpose of the trial was to impose punishment rather than to adjudicate in a fair and disinterested manner–I conclude that the evidence does not establish that Plaintiffs are likely to succeed on the merits. Plaintiffs contend that Jimmy Matta ("Matta"), a "close ally" of Tweedy and the president of the Regional Council, manipulated the Trial Committee and the

judge and jury of Plaintiffs' trial.  Mem., p. 35.  Plaintiffs contend that contrary to the Regional Council's bylaws that it maintain a "standing Trial Committee" and that members of the Trial Committee be selected by lottery, Matta "disbanded the standing Trial Committee" and replaced it with an "extremely statistically improbable" committee which included "no members from Oregon and four members who are friends and/or staff members supervised by . . . Tweedy, along with others appointed to staff positions by those he supervises . . . [and] [n]early all . . . [who] publicly endorsed . . . Tweedy's campaign."  Id.; Reply, p. 18.

Defendants, however, present evidence demonstrating that the Regional Council did not have a Standing Trial Committee when Matta was appointed as Regional Council President.  See Matta Decl., ¶ 4.  The evidence presented by Defendants also shows that the Trial Committee ultimately appointed by Matta was established "using a lottery system."  Id., ¶ 7.  Based on the evidence before me, I cannot conclude that there were procedural irregularities in Plaintiffs' trial establishing that the purpose of the trial was to impose punishment on Plaintiffs rather than to adjudicate in a fair and disinterested manner.

Plaintiffs also find "disturbing" the "conduct of two supposed neutrals, an 'Alternate' [(Doug Palachuk)] and an 'observer/advisor' [(Joe Baca)] to the trial committee, both supervised by and one a friend of . . . Tweedy."  Mem., p. 35.  The "disturbing" conduct with which Plaintiffs take issue includes Palachuk's and Baca's alleged behavior during Plaintiffs' trial, namely their "texting, consulting with one of the Charging Parties, and leaving the room repeatedly to consult with . . . Tweedy who was supposed to be sequestered as a witness."  Id., p. 36.  Plaintiffs point to evidence showing that several of the Plaintiffs observed Baca leaving the room "repeatedly" and saw him talk to Tweedy in the hall.  See Triplett Decl., ¶¶ 11-17.  Plaintiffs also point to Triplett's statement that he saw Baca "consulting" with Ted Aycock, one

of the charging parties, during the trial and that he saw Baca and Palachuk "texting a lot" during the trial. Id., ¶ 17; Savage Decl., Ex., 8, p. 190. Nothing in the record, however, shows what the context of the texts or "consultations" involved, and Puckett even admitted that he did not know what Baca was texting about. Savage Decl., Ex. 8, p. 246. The "disturbing" conduct cited by Plaintiffs is simply insufficient to establish that they are likely to succeed on the merits.

Finally, Plaintiffs argue that the "penalties imposed on [P]laintiffs . . . demonstrate [D]efendants' motive for disciplining them." Mem., p. 35. Plaintiffs assert that "there is a gross disparity between the sentences of those who hold office and those who do not" and that "the penalties are grossly disproportionate to those generally issued in the disciplinary process." Id., p. 36. Plaintiffs' do not articulate, and I decline to venture, how the penalties by themselves establish motive. Moreover, even assuming there was disparity in the penalties and that the penalties were disproportionate, such evidence does not establish that Plaintiffs' are likely to prevail on the merits.

In sum, considering all of Plaintiffs arguments and evidence, I cannot conclude that Plaintiffs are likely to succeed on the merits that Defendants disciplined Plaintiffs to derail the opposition to Tweedy.

### III. Due Process Violations

Plaintiffs assert that the "procedural irregularities described above . . . give rise to an independent claim under the LMRDA for violation of [P]laintiffs' due process rights" under 29 U.S.C. § 411(a)(5). Mem., pp. 36-37. The Ninth Circuit has recognized that "[t]he courts have had some difficulty deciding what the 'full and fair hearing' provision of the L.M.R.D.A. requires." Myers v. Affiliated Prop. Craftsmen Local No. 44, 667 F.2d 817, 820 (9th Cir. 1982). The Ninth Circuit, however, has stated that:

> An unbiased or untainted finder of fact is fundamental to a full and fair hearing and procedural due process. Union trial committees typically consist of members of the same local. Accordingly, the triers of fact can be expected to have some knowledge of the events in question obtained outside of the disciplinary hearing. There are limits, however, to the personal knowledge the courts have tolerated from the judges of union disciplinary proceedings. For example, witnesses to the offenses in question cannot sit on the union's trial committee. . . . . [U]nion "disciplinary charges cannot be heard upon remand (from the district court) for a new trial by those who previously heard the charges." Similarly, . . . "introducing into evidence a prior invalid decision which was vacated by the district court, deprive[s] the union members of an 'impartial, open-minded tribunal. . . .'" When a member of a trial committee has admitted to prejudging the guilt of the accused before the hearing, the courts have not hesitated to rule there was no full and fair hearing as required by the L.M.R.D.A.

Id. at 820-21(internal quotations and citations omitted).

For the same reasons stated above, the evidence on which Plaintiffs rely are insufficient to establish that Plaintiffs are likely to succeed on their claim that Defendants' violated their due process rights in violation of the LMRDA.

**IV. Irreparable Harm**

Plaintiffs contend that they will suffer immediate and irreparable harm unless the Court grants injunctive relief. They contend that a "chilling effect is occurring because of [D]efendants' actions" and that the charges have caused an "overall atmosphere of fear". Mem., pp. 40-41.

The penalties from which Plaintiffs seek to be preliminarily enjoined have been stayed pursuant to the July 19, 2012, order by the UBC General Executive Board. See Tweedy Decl., Ex. 4, p. 3. Accordingly, even if this court denied Plaintiffs' motion for preliminary injunction, Plaintiffs would not suffer "immediate and irreparable harm" because the relief they seek has already been effectuated by the July 19, 2012, stay, which frees Defendants from having to pay any of the fines, allows Plaintiffs to maintain their current offices and their membership with the UBC, and allows them to freely participate in the upcoming August 2012 election.

16 - OPINION & ORDER

Furthermore, it is simply too speculative to conclude at this juncture of the case that were a preliminary injunction not issued, Savage would not prevail in the August 2012 election. Although Plaintiffs present evidence showing that some members are afraid and do not want to publicly support Savage's campaign, such evidence does not establish that Savage will not win at the August 2012 election, let alone establish that Plaintiffs will suffer irreparable harm.

In sum, Plaintiffs make an insufficient showing that they would suffer irreparable harm without a preliminary injunction.

**V. Balance of the Equities**

In considering whether to issue a preliminary injunction courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 129 S. Ct. at 376; see also Univ. of Haw. Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1108 (9th Cir. 1999) ("To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it."). Plaintiffs contend that where there are no allegations that union officers improperly carried out the duties of their office, there is no harm in having those persons remain in office. Moreover, Plaintiffs assert that where there are serious questions as to whether a union imposed discipline in violation of a member's free speech rights, or pursuant to a procedurally flawed process, there is no harm to the union in being ordered not to impose the discipline. Defendants respond that the penalties have been stayed and argue that it is well-established that courts are reluctant to interfere in the affairs of labor unions.

The balance of equities does not tip in Plaintiffs' favor. Discussed above, Plaintiffs are not likely to succeed on the merits and would not suffer irreparable harm were I to not issue a

17 - OPINION & ORDER

preliminary injunction. The general principle that unions should be left free to "operate their own affairs, as far as possible" further guides me to conclude that the balance of equities does not tip in Plaintiffs' favor. See United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski, 457 U.S. 102, 117 (1982) (citation omitted). Indeed, the Supreme Court has explicitly stated that "great care should be taken not to undermine union self-government" and that "individual members are fully competent to regulate union affairs." Id.; see also Int'l Sound Technicians, 800 F.2d at 975 (stating that "[a]bsent a specific limitation in a union constitution, this court will not interfere with the efforts of a union's leaders to manage the affairs of their organization"). The harm that a preliminary injunction would cause by interfering with the internal affairs of Defendants and by undermining union self-government in this instance gives me great hesitation in issuing a preliminary injunction.

In short, the balance of equities tips in favor of declining to interfere with the internal affairs of Defendants and tips against issuing a preliminary injunction under the circumstances here. See Sadlowski, 457 U.S. at 117; see also Int'l Sound Technicians, 800 F.2d at 975.

**VI. Public Interest**

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)) (internal quotation marks omitted). "The public interest inquiry primarily addresses impact on non-parties rather than parties." Sammartano v. First Judicial Dist. Court, 303 F .3d 959, 974 (9th Cir. 2002).

Plaintiffs generally contend that "[i]njunctions in support of union member free speech rights serve the public interest in freedom of expression and the democratic governance of unions." Mem., p. 42. Under the facts specific to this case, however, I find that this factor does

not tip in favor of Plaintiffs where I have already concluded that they are not likely to succeed on the merits and that they would not suffer irreparable harm were I to not issue a preliminary injunction. The public's own interest in having the August 2012 Regional Council election free from this court's involvement, namely free from a court order enjoining the same penalties which have already been stayed, weighs in favor of not granting a preliminary injunction under the particular circumstances here.

In sum, weighing Plaintiffs' probability of success on the merits, irreparable harm, the balance of the hardships, and the public interest, I find that Plaintiffs are not entitled to a preliminary injunction.

## CONCLUSION

Based on the reasons above, I conclude that Plaintiffs are not entitled to a preliminary injunction or in the alternative, a temporary restraining order, and therefore Plaintiffs' Motion (doc. #2) is DENIED.

IT IS SO ORDERED.

Dated this 10 day of Sept., 2012.

_____
MARCO A. HERNANDEZ
United States District Judge

19 - OPINION & ORDER