IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


PETER SAVAGE, CLIFF PUCKETT,
V. MICHAEL WALLACE, and
GABRIEL TRIPLETT,

          Plaintiffs,

                                  No. 3:12-cv-01317-HZ

                                  OPINION & ORDER

   v.

DOUG TWEEDY, PACIFIC NORTHWEST
REGIONAL COUNCIL OF CARPENTERS,
and UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA,

          Defendants.


Catherine A. Highet
Benjamin Wright Haile
PORTLAND LAW COLLECTIVES, LLP
1130 SW Morrison, Suite 407
Portland, OR 97205

      Attorneys for Plaintiffs

Daniel M. Shanley

James L. Francesconi
Matthew E. Malmsheimer
Patrick A. Maher
HAGLUND KELLEY HORNGREN JONES & WILDER, LLP
200 SW Market Street, Suite 1777
Portland, OR 97201

> Attorneys for Doug Tweedy and Northwest Pacific Regional Council of Carpenters

Brian F. Quinn
DECARLO, CONNOR & SHANLEY PC
101 Constitution Avenue, NW
Washington, DC 20001

Daniel M. Shanley
James L. Francesconi
Matthew E. Malmsheimer
Patrick A. Maher
HAGLUND KELLEY HORNGREN JONES & WILDER, LLP
200 SW Market Street, Suite 1777
Portland, OR 97201

> Attorneys for United Brotherhood of Carpenters and Joiners of America

HERNANDEZ, District Judge:

This action arises out of a phone bank orchestrated by Plaintiffs during a union election in an effort to defeat Doug Tweedy, the Executive Secretary Treasurer ("EST") of the Pacific Northwest Regional Council of Carpenters ("PNWRCC"). Plaintiffs allege that their discipline for phone banking, which included removal from their elected offices, suspension from the union for up to 6 years, and monetary fines, violated their protected activity under the Labor-Management Reporting and Disclosure Act ("LMRDA").

Now before the Court is Plaintiffs' second motion for leave to amend their complaint [194], Plaintiffs' motion for partial summary judgment [155], and Defendants' motion for summary judgment [162]. For the reasons that follow, Plaintiffs' second motion for leave to file an amended complaint [194] is DENIED, Plaintiffs' motion for partial summary judgment [155]

is GRANTED in part and DENIED in part, and Defendants' motion for summary judgment [162] is GRANTED in part and DENIED in part.[1]

## BACKGROUND

Plaintiffs' cause of action arises out of a union election that took place in December 2011. Plaintiffs were members of the United Brotherhood of Carpenters ("UBC") and the PNWRCC. Plaintiffs were also members of and supported the "Reform Party," which according to Plaintiffs, opposed the policies of the PNWRCC's highest officer, EST Doug Tweedy.

On November 14, 2011, Savage emailed other Local 156 Reform Party supporters, including Financial Secretary and Delegate Wayne Frazey, Trustees and Delegates Don Ball and Jason Sheckler, and Delegate Krista Farmer, to conduct a phone bank for the December 2011 election. Shanley Decl. in Supp. of Defs.' Mot. for Summ. J., Exs. 12, 16 [164]. On November 28 and 29, 2011, Plaintiffs engaged in a phone bank at the union hall of Local 156 where they encouraged other members to vote in the upcoming election and support Reform Party candidates. The Reform Party-endorsed candidates won every office for which they ran in the December 2011 election. On December 13, 2011, Tyson Stuber sent a letter to UBC President Douglas McCarron protesting the election because the Reform Party had "access[ed] union [members'] records, including phone numbers, via the UBC ULTRA System and phone banked/campaign-called at the local union hall . . . ." Id., Ex. 19 [164]. James P. Gleason, the UBC Western District Representative, investigated and submitted a report dated January 5, 2012, in which he found, among other things, that "[t]here was a use of union facilities by candidates and supporters only offered to one group without Local Union authorization[,]" and recommended that "a new election . . . be ordered for all candidates and offices nominated at the

---

[1] Plaintiffs also filed a motion to compel [173]. I ruled on Plaintiffs' motion to compel at a hearing held on February 12, 2014.

November 12, 2011 nomination meeting." Id., Ex. 20, p. 367. Based on a directive from

McCarron, Local Union 156 was required to rerun the December 2011 election.[2]

     Starting on January 23, 2012, Tyson Stuber, Jeff Harms, and Jennifer Van Datta filed

charges against Plaintiffs alleging that Plaintiffs had improperly accessed union records to make

campaign calls and had not allowed other candidates access to member phone numbers. Stuber,

Harms, and Van Datta charged Plaintiffs with causing dissension, defrauding the union, and

failing to obey authority under sections 51(A)(1), (6) and (12) of the UBC Constitution, as well

as violating Section 31H of the UBC Constitution, which allows an examination of the

membership list "containing the names and addresses of all members once within thirty days

prior to the election . . . ." Highet Decl. in Supp. of Pls.' Mot. for Summ. J., Ex. 4, p. 43 [157].

To determine whether there was sufficient evidence for the charges filed against Plaintiffs to go

to trial, the Executive Committee held a meeting in February 2012 in Spokane, Washington,

where the charging parties presented their charges. Highet Decl. in Opp'n to Defs.' Mot. for

Summ. J., Ex. 30, p. 4 [189].

     On April 28, 2012, the Standing Trial Committee tried those who had engaged in the

phone bank, including Plaintiffs. All parties were represented by member counsel and had the

opportunity to make opening statements, introduce evidence, examine witnesses, and make

closing arguments. The trial lasted approximately nine and one-half hours.

     On April 29, 2012, the Standing Trial Committee found: (1) Savage guilty of violating

Sections 51A(1), (6), and (12); (2) Puckett guilty of violating Sections 51A(6) and (12); (3)

Wallace guilty of violating Sections 51A(1), (6), and (12); and (4) Triplett not guilty because he

was an "apprentice." The Standing Trial Committee recommended that Savage, Puckett, and

---

[2] In February 2012, Local Union 156 reran the December 2011 election, which Puckett and
Wallace again won.

Wallace be prevented from holding office for six years and fined $1,000 each.  The delegates of

the PNWRCC voted to impose the penalties recommended by the Standing Trial Committee.

The UBC upheld the discipline upon Plaintiffs' appeal.

In a letter dated July 17, 2012, Tweedy, on behalf of the PNWRCC, requested that the

UBC's General Executive Board stay the penalties imposed against Plaintiffs because of the

upcoming election for EST on August 17 and 18, 2012.  Plaintiffs' penalties were stayed.  On

July 19, 2012, Plaintiffs filed a motion for a preliminary injunction.  Plaintiffs' motion for

preliminary injunction sought, among other things, a declaration that their discipline violated the

LMRDA and an injunction requiring Defendants to vacate the penalties imposed against

Plaintiffs and to reinstate Plaintiffs to their elected offices.  On August 10, 2012, the Court

denied Plaintiffs' motion for a preliminary injunction.  Plaintiffs appealed the Court's order to

the Ninth Circuit.  On August 24, 2012, the stay of Plaintiffs' penalties were lifted and their

sentences re-imposed.

On May 16, 2013, the Ninth Circuit reversed and remanded this Court's August 10, 2012,

order, holding that the Court had abused its discretion when concluding that Plaintiffs were not

likely to succeed on the merits and had not suffered irreparable harm.  Plaintiffs subsequently

filed a motion to compel, motion to amend the first amended complaint, and a motion for partial

summary judgment.  Defendants filed a motion for summary judgment on all of Plaintiffs'

claims.  The Court held oral argument on February 12, 2014.

**STANDARDS**

**I. Motion to Amend the Complaint**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2); <u>Lockheed Martin Corp. v. Network Solutions, Inc.</u>, 194 F.3d 980, 986 (9th Cir.

1999) (Citations omitted).  "The decision of whether to grant leave to amend . . . remains within

the discretion of the district court, which may deny leave to amend due to undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d

522, 532 (9th Cir. 2008) (internal quotations marks and citations omitted).

## II. Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The

moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine

issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28

(9th Cir. 2009) (internal quotation marks omitted).  The nonmoving party must go beyond the

pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218

(9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v.

Connell, 579 F.3d 1047, 1056 (9th Cir. 2009).  The court draws inferences from the facts in the

light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d

1108, 1112 (9th Cir. 2011).  If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

### I. Motion for Leave to Amend

Plaintiffs seek leave to amend their first amended complaint.[3]  For the reasons that follow, Plaintiffs' motion for leave to amend is denied.

In October 2012, I granted in part and denied in part Defendants' first motion to dismiss. In April 2013, I granted Defendants' second motion to dismiss.  Over two months after the close of discovery, after Plaintiffs' motion for summary judgment was fully briefed, and just five days before Defendants' motion for summary judgment was fully briefed, Plaintiffs filed their motion for leave to file a second amended complaint.  Plaintiffs' motion for leave to file a second amended complaint seeks to re-allege their ratification claims against the UBC in "Count" I and "Count" II and their facial challenge to provisions in the UBC Constitution as set forth in "Count" III.[4]  Plaintiffs' belated attempt to revive claims already dismissed at this late stage of the proceeding and failure to cure the deficiencies in their previous amendments weigh against granting Plaintiffs' motion.  See McNall v. Credit Bureau of Josephine Cnty., 689 F. Supp. 2d 1265, 1269 (D. Or. 2010) ("The timing of a motion to amend after completion of discovery and after a motion for summary judgment has been filed weighs heavily against allowing amendment.") (Citation omitted).  Plaintiffs have repeatedly failed to allege facts showing that the UBC affirmed Local 156's actions with full knowledge that it was part of an overall scheme

---

[3] Plaintiffs did not file a reply brief in support of their motion for leave to amend.

[4] Plaintiffs' first amended complaint refers to their claims as "Counts."  For the purpose of consistency, I also refer to Plaintiffs' claims as "Counts."

to suppress dissent in violation of the LMRDA.  See <u>Moore v. Local Union 569 of Int'l. Bhd. of Elec. Workers</u>, 989 F.2d 1534, 1543 (9th Cir. 1993) (citation omitted).  The prejudice that Defendants would face at this late stage from having to face claims I have already dismissed and which Plaintiffs have repeatedly failed to cure weigh against granting Plaintiffs' motion.

I also find that the futility of Plaintiffs' amendments weigh against granting Plaintiffs' motion for leave to amend their complaint.  In my August 11, 2013, Opinion & Order, I concluded that Plaintiffs failed to establish that union rules may be challenged under First Amendment principles as facially invalid and unconstitutionally overbroad and vague.  Plaintiffs continue to maintain that union rules may be facially invalid and unconstitutionally overbroad and vague.  See Pl.'s Reply, p. 1.  Plaintiffs' memorandum rehashing the same arguments I have already addressed does not provide a compelling reason to grant Plaintiffs' motion to amend.  Plaintiffs' motion for leave to amend their first amended complaint is denied.[5]

## II. Plaintiffs' Motion for Summary Judgment

### A. Count I: Whether Defendants Violated Plaintiffs' Free Speech Rights

#### 1. Ninth Circuit Order

Count I of Plaintiffs' first amended complaint alleges that Defendants violated Plaintiffs' equal voting rights protected under Section 101(a)(2) of the LMRDA, violated Plaintiffs' free speech rights protected under Section 101(a)(1) of the LMRDA, and unlawfully retaliated against Plaintiffs.  Plaintiffs only seek summary judgment on their free speech claim against the PNWRCC.  Plaintiffs argue that they are entitled to judgment as a matter of law with respect to

---

[5] Notably, at the February 12, 2014, oral argument hearing, Plaintiffs abandoned the arguments in their briefs and instead argued that the rules under which they were disciplined are not reasonable rules as required under <u>United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski</u>, 457 U.S. 102, 111 (1982).  Plaintiffs' belated attempt to raise new arguments at the February 12, 2014, hearing not made in any of their briefs and their belated attempt to proffer new grounds to support their motion to dismiss at this late stage are not well-taken and will not be considered.

their free speech claim based on the Ninth Circuit's order reversing and remanding this Court's

August 10, 2012, Opinion & Order denying their motion for a preliminary injunction.  Plaintiffs

rely on the Ninth Circuit's language that the PNWRCC interfered with their free speech rights

and that their discipline "was not justified by a reasonable rule."  Id., p. 13.

The Ninth Circuit has set forth a two-step process to determine whether a plaintiff's free

speech rights have been violated.  See United Steelworkers of Am., AFL-CIO-CLC v.

Sadlowski, 457 U.S. 102, 111 (1982).  "To determine whether a union rule is valid under [§

101(a)(2)], we first consider whether the rule interferes with an interest protected by the first part

of § 101(a)(2).  If it does, we then determine whether the rule is 'reasonable' and thus sheltered

by the proviso to § 101(a)(2)."[6]  Id.  "The critical question is whether a rule that partially

interferes with a protected interest is nevertheless reasonably related to the protection of the

organization as an institution."  Id. at 111-12.

In the order reversing and remanding this Court's August 10, 2012, Opinion & Order, the

Ninth Circuit specifically relied on Sadlowski, 457 U.S. at 112, concluding that "[t]he union

rules [Plaintiffs] were charged with violating clearly 'partially interfere[d]' with [Plaintiffs'

rights to meet and assemble freely and to express any views, arguments, or opinions as set forth

---

[6] 29 U.S.C. § 411 provides:

> Every member of any labor organization shall have the right to meet and assemble
> freely with other members; and to express any views, arguments, or opinions; and
> to express at meetings of the labor organization his views, upon candidates in an
> election of the labor organization or upon any business properly before the
> meeting, subject to the organization's established and reasonable rules pertaining
> to the conduct of meetings: Provided, That nothing herein shall be construed to
> impair the right of a labor organization to adopt and enforce reasonable rules as to
> the responsibility of every member toward the organization as an institution and
> to his refraining from conduct that would interfere with its performance of its
> legal or contractual obligations.

29 U.S.C. § 411(a)(2) (emphasis in original).

under 29 U.S.C. § 411(a)(2)] because they purported to regulate the time, place, and manner in which candidates for union office could engage in protected campaign activity." Highet Decl. in Supp. of Pls.' Mot. for Summ. J., Ex. 9, pp. 2-3 [157]. The Ninth Circuit determined there was "no doubt that the [UBC] or the Local could 'adopt and enforce reasonable rules' regarding candidates' phone banking and access to the Local's membership lists." Id., p. 3. The Ninth Circuit, however, found that Plaintiffs had "shown a likelihood of success on the merits because the regulations [Plaintiffs] were disciplined for violating were not 'established' at the time [Plaintiffs] conducted the phone bank" and because the UBC Constitution did not "purport to regulate the electioneering conduct of candidates or their supporters" and did not "require that candidates invite their opponents to participate in their campaign activity." Id.

Defendants contend that Plaintiffs are not entitled to summary judgment because the Ninth Circuit did not "evaluate the UBC election rules in light of . . . LMRDA sections 401(c) and 401(g)," which Plaintiffs assert are per se reasonable rules that Plaintiffs violated. Opp'n to Pls.' Mot. for Summ. J., pp. 13-14. Defendants contend that Plaintiffs violated Section 401(g) by illegally using Local 156's union hall, secretary, and membership list.[7] Id., p. 1. Defendants assert that the UBC had an established rule prohibiting violations of 401(g) in local union elections as shown by the fact that the UBC's Nomination and Election Procedures Booklet ("the UBC Election Booklet") expressly states that the "booklet does NOT supersede the laws of the

_____

[7] Section 401(g) provides:

> No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

28 U.S.C. § 481(g).

10 - OPINION & ORDER

United States" and expressly warns that "[u]nder Section 401(g) of the LMRDA, union funds may not be used to promote the candidacy of any person in a Local Union or Council election." Roberts Decl. in Supp. of Opp'n to Pls.' Mot. for Summ. J., Ex. 1, pp. 1-2 [165].  With respect to Section 401(c),[8] Defendants assert Section 401(c) is incorporated in Section 8 of the UBC Election Booklet, and that applied to Savage, Section 401(c) precluded him from "discriminat[ing] in the use of the membership list."  Opp'n to Pls.' Mot. for Summ. J., p. 15.

Defendants' new, post hoc theory that Plaintiffs violated Sections 401(g) and 401(c) of the LMRDA are unavailing.  Defendants rely on statements by John Roberts, the Chairman of the Standing Trial Committee, stating that "election rules [in the UBC Election Booklet] are part of the UBC Constitution" and that "the [Standing] Trial Committee determined that Savage, Puckett and Wallace violated . . . 401(g) of the LMRDA, which is specifically mentioned in the [UBC Election Booklet]."  Roberts Decl., ¶¶ 4-5, 30.  Defendants also rely on statements by John Heaney, who according to Defendants is a "former high-ranking Department of Labor official." Opp'n to Pls.' Mot. for Summ. J., p. 7.  Defendants proffer Heaney's statements that the UBC

---

[8] Section 401(c) provides in pertinent part:

> Every national or international labor organization, except a federation of national or international labor organizations, and every local labor organization, and its officers, shall be under a duty . . . to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members, and whenever such labor organizations or its officers authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate or of the labor organization itself with reference to such election, similar distribution at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution.

29 U.S.C. § 481(c).

Constitution "incorporated" Section 401(g).  Highett Decl. in Supp. of Pls.' Reply, Ex. 4, p. 6
[182].

Roberts' and Heaney's statements are insufficient to create a genuine issue of material
fact as to whether Defendants were disciplined for violating Sections 401(g) and 401(c).  The
undisputed evidence of the disciplinary hearings–including the charges brought against
Plaintiffs, the four-hundred page Trial Transcript, the Standing Trial Committee Report, the
decision of the Appeals Committee, and the denial of the second level of Plaintiffs' appeal by the
UBC's General Executive Board–undisputedly show that Plaintiffs were charged with and
disciplined for causing dissension, defrauding the union, and violating the oath of membership
under Sections 51A(1), (6), and (12) of the UBC Constitution, respectively, not Sections 401(g)
and 401(c) of the LMRDA.

Furthermore, Section 52C of the UBC Constitution specifically requires that all charges
"specify the particular Paragraph of Section 51 or the particular Bylaw or Trade Rule violated . .
. ."  Highet Decl. in Supp. of Pls.' Mot. for Summ. J., Ex. 4, p. 68.  There is no language in the
disciplinary proceedings specifically referring to Sections 401(g) or 401(c) of the LMRDA.
Indeed, Defendants' representation that Plaintiffs violated Sections 401(g) and 401(c) is not even
alleged in their Answer, which merely alleges that Plaintiffs were charged with "causing
dissension, defrauding the union, and violating the oath of membership by violating the UBC's
constitution and failing to obey authority."  Answer, ¶ 22.

In sum, Defendants fail to create a genuine issue of material fact as to whether Sections
401(g) and 401(c) of the LMRDA were the actual rules under which Plaintiffs were disciplined.

Plaintiffs' motion for summary judgment as to their first claim for relief against the PNWRCC is granted.[9]

### B. Count III: Whether the "Dissention" Rule is Facially Invalid

Plaintiffs seek summary judgment against all Defendants as to Count III, a claim I dismissed in my August 11, 2013, Opinion & Order.  Plaintiffs argue that they are entitled to summary judgment as to Count III because the rule precluding union members from "causing dissention" under Section 51A(1) of the UBC Constitution is facially invalid and is unconstitutionally vague and overbroad.  As discussed in my August 11, 2013, Opinion & Order, Plaintiffs fail to establish that the First Amendment principles of overbreadth and vagueness apply to union rules.  As discussed above, Plaintiffs also fail to establish that their motion for leave to amend their first amended complaint should be granted at this late stage of the proceeding.  Plaintiffs' motion for summary judgment as to Count III is denied.

### C. Evidentiary Objections

#### 1. Declarations

Plaintiffs object to the declarations of John Roberts, Doug Tweedy, Joe Baca, Pedro Espinoza, and Ed Triezenberg, arguing that their declarations may not be considered because they are unsigned.  Plaintiffs' arguments fail.  Pursuant to Local Rule 11-1(c), "Documents containing the signature of a Non-Registered User are to be filed electronically with the signature represented by an 's/' and the name typed in the space where a signature would otherwise appear, or as a scanned image."  Here, the declarations to which Plaintiffs object satisfy Local Rule 11-1(c).  Plaintiffs' objections are overruled.

/ / /

---

[9] Having so concluded, I decline to address whether Plaintiffs actually violated Sections 401(g) and 401(c).

### 2. Heaney's Expert Opinion

Plaintiffs object to Heaney's opinion that certain provisions are "reasonable" under

Section 102(a)(2) of the LMRDA and whether certain alleged actions violated Section 401 of the

LMRDA. Even when considering Heaney's opinion, it fails to create a genuine issue of material

fact as to whether the PNWRCC violated Plaintiffs' First Amendment rights because as

discussed above, no reasonable trier of fact could conclude that Plaintiffs were actually charged

with and disciplined for violating Sections 401(g) and 401(c) of the LMRDA. Accordingly, I

decline to address Plaintiffs' objection.

## III. Defendants' Motion for Summary Judgment

### A. Count I: Whether Defendants Violated Plaintiffs' Free Speech and Equal Voting Rights

As stated above, Count I of Plaintiffs' first amended complaint alleges that Defendants

violated Plaintiffs' equal voting rights under Section 101(a)(2) of the LMRDA, free speech rights

pursuant to Section 101(a)(1) of the LMRDA, and unlawfully retaliated against Plaintiffs.

Defendants argue that they are entitled to summary judgment as to all three claims.

### 1. Section 101(a)(1) Equal Voting Rights

Union member voting rights are set forth under 29 U.S.C. § 411(a)(1), which provides:

> Every member of a labor organization shall have equal rights and privileges
> within such organization to nominate candidates, to vote in elections or
> referendums of the labor organization, to attend membership meetings, and to
> participate in the deliberations and voting upon the business of such meetings,
> subject to reasonable rules and regulations in such organization's constitution and
> bylaws.

29 U.S.C. § 411(a)(1).

"Section 101(a)(1) is an anti-discrimination provision, pure and simple. To state a claim

under section 101(a)(1), a union member must allege a denial of rights accorded to other

members." <u>Ackley v. W. Conference of Teamsters</u>, 958 F.2d 1463, 1473 (9th Cir. 1992) (citations omitted). In their briefs, Plaintiffs do not specifically argue how they were denied equal voting rights and do not specifically point to any evidence showing that they were denied voting rights accorded to other members. At oral argument, Plaintiffs raised for the first time that Defendants violated Triplett's equal voting rights because he was unable to vote for who he wanted when Puckett and Savage were precluded from running for office. Plaintiffs' argument, raised for the first time at oral argument, is unavailing. Moreover, the undisputed evidence shows that all union members were unable to vote for Puckett and Savage–not just Triplett. Because Plaintiffs fail to create a genuine issue of material fact as to whether Triplett or any of the other Plaintiffs were denied rights accorded to other members, Defendants' motion for summary judgment is granted.

## 2. Section 101(a)(2) Free Speech Rights

### i. Sections 401(g) and 401(c) of the LMRDA

The parties make the same arguments as those made when addressing Plaintiffs' motion for summary judgment. Defendants assert they are entitled to summary judgment as to Plaintiffs' free speech rights claim because Plaintiffs were disciplined for violating Sections 401(g) and 401(c) of the LMRDA. As discussed above, Defendants fail to create a genuine issue of material fact as to whether Plaintiffs' free speech rights were violated because Defendants do not proffer sufficient evidence showing that Sections 401(g) and 401(c) of the LMRDA were the actual rules under which Plaintiffs were disciplined. Defendants' motion for summary judgment is denied.

/ / /

### ii. Tweedy

Defendants assert that Plaintiffs' free speech claim against Tweedy must be dismissed because there is no evidence showing that Tweedy did anything to violate Plaintiffs' free speech rights.  Plaintiffs disagree, citing Tweedy's phone records, which Plaintiffs assert show that Tweedy was personally involved with their discipline.  The phone records on which Plaintiffs rely show who Tweedy spoke with, when the phone conversations took place, and the duration of the calls.  Among other things, Tweedy's phone records show that on January 11, 2012, the evening before Van Datta brought charges against Plaintiffs, Tweedy spoke with her on the phone for approximately 44 minutes.  Highet Decl. in Opp'n to Defs.' Mot. for Summ. J., Ex. 7, p. 11.  The record further shows that the following day and before Van Datta filed charges, Tweedy again spoke with Van Datta on the phone for approximately 22 minutes.  Id.  Based on the record, including Tweedy's political position and the phone calls between Van Datta and Tweedy near the time Van Datta filed charges, a reasonable trier of fact could conclude that Tweedy was personally involved in the charges filed against Plaintiffs based on Plaintiffs' political views.  Defendants' motion for summary judgment as to Plaintiffs' free speech claim against Tweedy is denied.

### 3. Retaliation

To state a retaliation claim in violation of the LMRDA, "§ 101(a)(2), a union member must allege facts showing that: (1) he or she exercised the right to oppose union policies; (2) he or she was subjected to retaliatory action; and (3) the retaliatory action was a direct result of his [or her] decision to express disagreement with the union's leadership."  Casumpang v. Int'l Longshoremen's and Warehousemen's Union, Local 142, 269 F.3d 1042, 1058 (9th Cir. 2001) (internal quotation marks and citation omitted).  Plaintiffs contend there is a genuine issue of

material fact as to whether Defendants unlawfully retaliated against them under the LMRDA for

their political opposition.  In support of their position, Plaintiffs rely on the following facts,

which Plaintiffs assert raise an inference of Defendants' motives.  When considering all of the

following facts cumulatively, I conclude there is a genuine issue of material fact as to whether

Plaintiffs' discipline was a direct result of their decision to express disagreement with the union's

leadership.

### i. Phone Calls

Plaintiffs rely on a phone call between Max Murphy, a PNWRCC staff member, and

Gleason on April 25, 2012, and four phone calls between Murphy and Gleason on April 27,

2012, the night before the Standing Trial Committee on April 28, 2012.  Highet Decl. in Opp'n

to Defs.' Mot. for Summ. J., Ex. 3, pp. 13, 17.  Plaintiffs also rely on phone calls made on April

27, 2012, between Murphy and Van Datta and Stuber–two of the charging parties, and Murphy

and Davis, one of the participants in the phone bank.  Id., pp. 17-18.  Plaintiffs further rely on

phone calls made on April 27, 2012, between Tweedy and Davis, Davis and Murphy, and Davis

and Van Datta.  Id., pp. 3, 19; Id., Ex., 8, p. 15.  Plaintiffs also cite phone calls between Tweedy

and Davis during the day of the Standing Trial on April 28, 2012, phone calls between Tweedy

and Murphy on May 1, 2012–two days after the Standing Trial Committee found Plaintiffs

guilty, and phone calls between Tweedy and Murphy on May 19, 2012–the evening the

PNWRCC decided Plaintiffs' penalties.  Id., Ex., 4, pp. 1-2, 28; Id., Ex. 6, p. 3; Id., Ex. 8, p. 15.

### ii. Actions by Tweedy and Murphy

Plaintiffs rely on evidence showing that Tweedy had approached Murphy and had

expressed concern that people were "phone banking" in the December 2011 election.  Id., Ex. 20,

p. 2.  Plaintiff's evidence shows that Stuber "asked [Murphy] if [Murphy] could help [him and

Harms] draw up the proper [charges] . . . make sure all the T's [were] crossed and I's were dotted and make sure it was . . . presentable literature . . . ."  Id.  Plaintiffs also rely on evidence showing that Tweedy provided Stuber with a confirmation number of Stuber's plane ticket to the February 2012 Executive Committee meeting.  Id., pp. 4-5.  Plaintiffs cite additional evidence showing that Tweedy helped Stuber accumulate the names of all the people involved in the phone bank.  Id.  In addition, Plaintiffs rely on Van Datta's deposition statements that Murphy had "asked [her] at some point if [she] was going to file charges [against those who had phone banked]" and told her that others were filing charges against the phone bankers.  Id., Ex. 29, p. 4. Finally, Plaintiffs proffer evidence showing that Patrick Davis, a PNWRCC staff member, used Murphy as an "intermediary" because "it was almost impossible for [Davis, Harm, and Stuber] to get together" due to their work schedules.  Id., Ex. 22, p. 5.  The record shows that as an "intermediary," Murphy would receive faxes of drafts of the charges from Davis and would then "contact [Harm and Stuber]."  Id.

### iii. Material Assistance

Plaintiffs contend that Tweedy and Murphy provided "material assistance" to the Charging parties to travel to the February 2012 Executive Committee meeting.  Opp'n to Defs.' Mot. for Summ. J., p. 33.  In support of their position, Plaintiffs rely on evidence showing that Davis was in Murphy's living room–with Murphy present–when Davis purchased Stuber's airline ticket, and that Davis used Murphy's email address when making the purchase.  Id., p. 8. Plaintiffs also present evidence showing that Murphy picked up Harms and Stuber after they arrived at the airport in Washington to attend the February 2012 Executive Committee meeting and that after Harms and Stuber had "missed their flights" in Washington, Davis gave Harms and

Stuber a ride back to Portland where they had parked their cars.  <u>Id.</u>, Ex. 22, p. 11; <u>Id.</u>, Ex. 26, pp. 4, 18.

### iv. Jobs for Harms and Stuber

Plaintiffs rely on evidence which they assert show that Harms and Stuber were rewarded with jobs at the PNWRCC approximately nine months after they had filed charges against Plaintiffs.  Plaintiffs rely on phone records showing that four days after the charges were received by the PNWRCC, PNWRCC President Jimmy Matta, one of two people who makes hiring recommendations to Tweedy, called Murphy, who subsequently called Harms and Stuber. Plaintiffs also rely on evidence showing that Stuber filled out a job application for a position at the PNWRCC and that Harms filled out a job application eleven days after the charges were received by the PNWRCC.  Plaintiffs also point to evidence showing that approximately nine months after Harms and Stuber had filed charges against Plaintiffs, they were hired for the positions for which they had applied.

### v. Composition of the Standing Trial Committee

Plaintiffs rely on the composition of the Standing Trial Committee.  Plaintiffs rely on evidence showing that the Standing Trial Committee included no members from Oregon–a state where Plaintiffs assert opposition to Tweedy is the strongest, included four of Tweedy's subordinates and associates, and included members who publicly endorsed Tweedy's campaign.

When collectively considering the above facts, I conclude there is a genuine issue of material fact as to whether Defendants unlawfully retaliated against Plaintiffs.  The phone records around the time of the Standing Trial Committee, the actions taken by Tweedy and Murphy, the jobs Harms and Stuber obtained after filing the charges, and the composition of the Standing Trial Committee–considered together, create a triable issue of material fact as to

whether Defendants were involved in the charges brought against Plaintiffs in retaliation for Plaintiffs' political opposition.

**B. Count II: Whether Defendants Violated Plaintiffs' Due Process Rights**

Count II alleges Defendants unlawfully deprived Plaintiffs of their "right to a full and fair hearing" in violation of Section 101(a)(5)(C) of the LMRDA, 29 U.S.C. § 411(a)(5).  First Am. Compl., ¶ 47.  Section 101(a)(5) provides, "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined . . . unless such member has been . . . (C) afforded a full and fair hearing."  "Section 101(a)(5) (C) of the LMRDA guarantees union members a 'full and fair' disciplinary hearing, and . . . this guarantee requires the charging party to provide some evidence at the disciplinary hearing to support the charges made."  Int'l Bhd. of Boilermakers v. Hardeman, 401 U.S. 233, 246-47 (1971) (citations omitted).

**1. Triplett**

Plaintiffs contend that Triplett's due process rights protected under the LMRDA were violated when he was subjected to the disciplinary process and when his free speech was chilled. Plaintiffs also contend that there is a triable issue of fact as to whether Triplett's due process rights were violated when "candidates he voted for were removed from office and when the activities of the Reform Party slate he wished to support . . . were chilled by Defendants' actions."  Opp'n to Defs.' Mot. for Summ. J., p. 37.

Plaintiffs cite no authority supporting their position.  Moreover, the record shows that Triplett was given adequate due process where he was tried by the Standing Trial Committee and was found not guilty of any of the charges filed against him.  Defendants' motion for summary judgment as to Triplett's due process claim is granted.

/ / /

**2. Remaining Due Process Claims by Savage, Wallace, and Puckett**

Defendants are not entitled to summary judgment against Savage's, Wallace's, and Puckett's due process claims. As discussed above, Defendants fail to create a genuine issue of material fact as to whether there was an established rule under which Plaintiffs were disciplined at the time of the phone bank. Because Plaintiffs were charged with and ultimately found guilty of violating rules that were not established at the time Plaintiffs conducted the phone bank, I cannot conclude that as a matter of law, Plaintiffs were provided the required due process.

Plaintiffs also proffer sufficient evidence creating a triable issue of material fact as to whether the Standing Trial Committee was biased. "An unbiased or untainted finder of fact is fundamental to a full and fair hearing and procedural due process." Myers v. Affiliated Prop. Craftsmen Local No. 44, 667 F.2d 817, 820 (9th Cir. 1982) (citation omitted). For the same reasons that Plaintiffs' retaliation claim survives summary judgment, Plaintiffs' due process claim also survives summary judgment. A reasonable trier of fact could conclude that the phone records show Tweedy and Gleason were involved in Plaintiffs' discipline, that Tweedy and Murphy assisted Harms and Stuber bring charges against Plaintiffs, and that Harms and Stuber were rewarded with jobs for bringing charges against Plaintiffs. In addition, a reasonable trier of fact could conclude that based on the evidence presented by Plaintiffs, the Standing Trial Committee was biased where it included members who publicly endorsed Tweedy's campaign and did not include any members from Oregon.

The evidence, when considered in its entirety, creates a genuine issue of material fact as to whether the Standing Trial Committee was impartial and whether Savage's, Wallace's, and

Puckett's due process rights were violated under Section 101(a)(5) of the LMRDA. Defendants' motion for summary judgment as to Count II is denied.[10]

## CONCLUSION

Based on the reasons above, Plaintiffs' second motion for leave to file an amended complaint [194] is DENIED, Plaintiffs' motion for partial summary judgment [155] is GRANTED in part and DENIED in part, and Defendants' motion for summary judgment [162] is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated this ___31___ day of __March__, 2014.

_____
MARCO A. HERNANDEZ
United States District Judge

---

[10] As stated in my August 11, 2013, Opinion & Order, Plaintiffs' ratification claim against the UBC and claim challenging the rule in the UBC Constitution precluding members from "causing dissension" as facially invalid are dismissed. As discussed above, Plaintiffs fail to demonstrate that their motion for leave to file a second amended complaint must be granted and as such, these claims are no longer part of the operative complaint. I therefore decline to address any argument seeking summary judgment on these claims.